[No. 7016]

ROTH v. DAWEDOFF.

EVIDENCE—*Competency*—Action for a commission upon the sale of
the stock of a jeweler. The vendor, being defendant, deposed that
he had never employed plaintiff to effect a sale, never agreed to pay
him a commission, and was not aware that he sent the purchaser to
him. The purchaser testified that he agreed to purchase the stock
only on condition that defendant would pay plaintiff's commission.
*Held* proper to prove as impeaching this testimony of the purchaser,
his statements that he had paid plaintiff a commission, that he
exhibited a receipt therefor, and that a writing produced was a true
copy of the receipt so exhibited.

*Error to Denver County Court.*—Hon. GEORGE W.
DUNN, Judge.

Mr. JAMES J. McFEELEY, for plaintiff in error.

Mr. A. NEWTON PATTON, for defendant in error.

Mr. JUSTICE HILL delivered the opinion of the court:

This action was instituted before a justice of the
peace to recover a commission for the sale of a stock of
jewelry. Upon appeal to the county court, where trial
was to the court, judgment was in favor of the plaintiff
for the amount claimed; the defendant brings the case
here for review.

The assignments urged pertain to the rejection of
certain testimony offered on behalf of the defendant.
The record discloses that a Mr. Carlton was the purchaser
and according to his testimony (which corroborates the
plaintiff's) the plaintiff was the procuring cause of the
of the sale. Mr. Carlton testified, that during the negotia-
tions he stated to the defendant that he would pay
so much for the stock, if the defendant would pay the
commission; that the defendant agreed to pay the com-
mission; that with this understanding the sale was closed.
Upon cross examination he stated that up to this time the
plaintiff had said nothing to him about paying a com-

mission; he said he made the statement to the defendant Mr. Roth, and desired the understanding for the reason that otherwise the plaintiff would look to him for the commission. He further said that he did not pay the plaintiff any commission, but that the next day he went into his store and gave him $25. When asked if he took a receipt he said he could not remember. He was then asked if he did not remember showing a receipt to Mr. Roth, Mr. Erdman, and another party, signed by the plaintiff which stated that the plaintiff had received $25 from him in full settlement for commission on sale of Charles Roth's stock of goods. To this he replied that no one saw any such receipt, but he would tell them how that happened, that somebody said to him that Mr. Dawedoff was going to jump him for a commisison and that he said "I know him," and also said that he showed a piece of paper for a joke or a bluff; that this was an ordinary piece of paper; that he had no occasion to take a receipt, but that he gave him $25 as a present.

The defendant was asked if he was present at the time and place of the receipt incident referred to by Mr. Carlton; after answering in the affirmative he was asked "Did you see at any time in the hands of Mr. Carlton what purported to be a receipt signed by the plaintiff in this case to Mr. Carlton for twenty-five dollars commission on the sale of the Roth jewelry stock?" Objection was sustained to this question. He was then asked if he saw a receipt from the plaintiff to Carlton for $25 as commission for the sale of this stock of goods. An objection was sustained to this question. He was then asked, "Did Mr. Carlton tell you at that time that he had paid Mr. Max Dawedoff, the plaintiff in this case, twenty-five dollars for commission on sale of these goods?" An objection was likewise sustained to this question. The same facts were attempted to be proved by Mr. Erdman with a

like result. Plaintiff also offered to prove that a copy of this receipt (alleged to have been shown them by Carlton) had been made at the time Carlton presented it; this copy was offered in evidence; all of which was refused. This purported copy read, "Received of M. Carlton twenty-five dollars in full payment for commission on stock of Charles Roth. (Signed) Max Dawedoff."

It is claimed by the defendant in error that all this evidence was incompetent and in no manner binding upon the plaintiff; that as it was testified to by both Mr. Carlton and the plaintiff that no such receipt was in existence it would be the same as any verbal statement about the payment of commission made by Mr. Carlton out of court, and not in the presence of the defendant, which it is claimed would have been incompetent and would have been excluded as irrevalent and hearsay; that as no witness testified to the genuineness of the signature of the plaintiff to the receipt, the reasoning of the trial court in sustaining the objection was correct when he said, "You must first show that there was an original before you can show that there is a copy."

To properly determine the question we must consider the issue as presented by the evidence. The defendant testified that he never employed the plaintiff to make a sale of his stock; that he never agreed to pay him for so doing; that he was not aware that the plaintiff ever sent Mr. Carlton to his place to make the purchase, and that he never agreed with Mr. Carlton to pay the plaintiff a commission. Mr. Carlton's testimony in part disputes that of the defendant, but he admits that he insisted upon having an understanding with the defendant to pay the commission, in order that he, Carlton, might not be held therefor. Under such circumstances this testimony was competent as tending to impeach his testimony and his version of the case; for this purpose it was proper for the defendant to show that the witness had made state-

ments material to the issue different from his testimony as given at the trial.—*Denver Tramway Company v. Owens,* 20 Colo. 107.

If he had stated in substance, as sought to be shown, that he had paid the commission for this sale, and if he had produced a receipt purporting to have been signed by the plaintiff thus disclosing, regardless of whether the genuineness of the signature was proven or not, where the facts are as above stated, we think this testimony competent as affecting his credibility and whether he did any part of it as a joke as he states, or otherwise, would not affect its admissibility, but would only go to its value.

For the reasons stated the judgment is reversed and the cause remanded for a new trial in harmony with the views herein expressed.

*Reversed.*

CHIEF JUSTICE MUSSER and Mr. JUSTICE GABBERT concur.

Decided April 7, A. D. 1913.   Rehearing denied October 8, A. D. 1913.